UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LEILA DOROODCHI**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **MARCO A. RUBIO**, in his official capacity as Secretary of State, *et al.*, <br><br> Defendants. | Case No. 24-cv-3170 (CRC) |

**MEMORANDUM OPINION**

Iranian fashion designer Leila Doroodchi applied for an O1-B temporary work visa to lead a project for an arts and cultural center in Texas. Following an interview by a U.S. consular officer, Ms. Doroodchi's application was first "refused" and then placed into "administrative processing" for further review. Seventeen months later, the State Department had yet to render a final decision. So Doroodchi and her employer filed this suit to compel a determination. The delay, they claim, breaches the government's duty to adjudicate visa applications within a reasonable amount of time, in violation of the Administrative Procedure Act and the Mandamus Act. The government moves to dismiss. Finding that Plaintiffs have failed to identify a discrete action that the State Department must take on Doroodchi's initially refused application as required for an unreasonable-delay claim, the Court will grant the government's motion and dismiss this case.

    I.    **Background**

The Court draws the following background from the allegations in the complaint.

Ms. Doroodchi is an Iranian citizen and fashion designer who markets her services under the name "Lili Dchi." Compl. ¶¶ 2, 27. In November 2022, Doroodchi contracted with a Texas-based arts and cultural center, AramArt World Music and Art Institute ("AramArt"), to lead its new fashion workshops and exhibitions in the United States. Id. ¶¶ 14–15. Pursuant to this agreement, on March 30, 2023, Doroodchi filed a O-1B nonimmigrant visa petition. Id. ¶ 16. O-1B visas are available to individuals with extraordinary ability in the arts or extraordinary achievement in the motion picture or television industry. O-1 Visa: Individuals with Extraordinary Ability or Achievement, U.S. Citizenship and Immigration Services (last updated Mar. 3, 2023), https://www.uscis.gov/working-in-the-united-states/temporary-workers/o-1-visa-individuals-with-extraordinary-ability-or-achievement. O-1B applicants first petition the United States Citizenship and Immigration Services ("USCIS") to certify their qualifications; once certified, the applicant may then file a visa application. Id.

USCIS approved Doroodchi's petition in April 2023. Compl. ¶ 16. Doroodchi then submitted a DS-160 visa application and was interviewed by a consular officer at the U.S. Embassy in Armenia in June 2023. Id. ¶¶ 17–18. Following the interview, Doroodchi received notice that her application had been refused and placed into administrative processing under § 221(g) of the Immigration and Nationality Act ("INA"). Id. ¶ 19. Doroodchi has repeatedly contacted the Embassy to inquire about the status of her application. Id. ¶ 27. Doroodchi and AramArt ("Plaintiffs") contend that the delay in further adjudicating Doroodchi's initially refused application is unreasonable and has caused them irreparable injury. Id. ¶ 22.

Accordingly, in November 2024, approximately seventeen months after the visa application was refused, Plaintiffs sued then Secretary of State, Antony J. Blinken, then Assistant Secretary for Consular Affairs, Rena E. Bitter, then Deputy Assistant Secretary for Visa

Services, Julie M. Stufft, and then Deputy Chief of Mission for the U.S. Embassy in Armenia, David Allen, ("Defendants") in their official capacities.[1]  Id. ¶¶ 29–32.  The complaint asserts that the INA (8 U.S.C. § 1202(d)), related regulations (22 C.F.R. §§ 41.106 and 41.121), the Administrative Procedure Act (5 U.S.C. § 555(b)), and the Immigration Services and Infrastructure Improvements Act of 2000 (8 U.S.C. § 1571) all require Defendants to adjudicate Doroodchi's petition in a timely fashion.  See Compl. ¶¶ 62–63, 68, 85; Opp'n at 5, 12.  And it seeks an order compelling such action under § 706 of the APA, as well as the Mandamus Act (28 U.S.C. § 1361).  Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Mot. Dismiss at 1.

## II.  Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Giliana v. Blinken, 596 F. Supp. 3d 13, 17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)).  However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor accept a plaintiff's legal conclusions as true.  Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  And, under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] Per Federal Rule of Civil Procedure 25(d), the successor to each of these listed public officers has automatically been substituted as a defendant.

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

### III. Analysis

The government advances two arguments in support of its motion to dismiss: (1) It has no discrete duty to further adjudicate Doroodchi's visa after refusing it and placing it into administrative processing and (2) the consular nonreviewability doctrine bars judicial review of any delay. The Court accepts the first argument and therefore need not reach the second.

The government asserts that there is no discrete agency action required of a consular officer after refusing and placing a visa application into administrative processing. Mot. Dismiss at 5. "The standards for reviewing agency inaction—including visa processing delays—are the same under the APA and Mandamus Act[,]" so the Court will address both claims together. Akrayi v. U.S. Dep't of State, 22-cv-1289 (CRC), 2023 WL 2424600, at *2 (D.D.C. Mar. 9, 2023). "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency failed to take a discrete agency action that it is required to take.'" Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (citation modified).

Defendants lean heavily on the D.C. Circuit's unpublished opinion in Karimova v. Abate, 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024). In Karimova, as in this case, a consular officer "officially 'refused' [the plaintiff's] application" and then "placed her application in 'administrative processing in order to verify qualifications for [her requested] visa.'" 2024 WL 3517852, at *2. The plaintiff filed suit approximately a year later, alleging that the consular officer in charge of adjudicating her application had breached a statutory duty, purportedly imposed by § 555 of the APA, to "make a final decision" on her visa application "within a reasonable time." Id at *2. Invoking the APA and Mandamus Act, the plaintiff asked

4

the district court to "'compel' the consular officer to perform her duty to finally adjudicate her visa." Id. at *2.  The district court granted the government's motion to dismiss, and the D.C. Circuit affirmed on the ground that the plaintiff had failed to show a legal duty that the defendants were required to perform.  Id. at *3.  The Circuit reasoned that, under applicable State Department regulations, once the visa application was refused and placed into administrative processing, Karimova's "matter" was "conclude[d]."  Id. at *4.  The government thus had no clear, non-discretionary duty under the APA to further adjudicate a visa application once it had been refused by a consular officer.  Id at *3.

The facts of this case mirror those in Karimova.  A straightforward application of Karimova would therefore dispose of Plaintiffs' claim that APA § 555(b) imposes a further duty to act on a refused application in administrative processing.

But there's a hitch.  As noted, the decision in Karimova is unpublished.  Per D.C. Circuit Rule 36(e)(2), "while an unpublished disposition may be cited . . . , a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."  The upshot appears obvious:  A panel decision with "no precedential value" cannot be binding on lower courts.  Concurring, Plaintiffs argue that the Court can, and should, disregard Karimova as wrongly decided.

The government begs to differ.  It asserts that Karimova, while unpublished, "still has binding precedential weight" in this court.  Mot. Dismiss at 6 n.2.  It points to D.C. Circuit Rule 32.1(b)(1)(B), which says that unpublished D.C. Circuit decisions entered after January 1, 2002 "may be cited as precedent."  But permitting parties to cite a decision as precedent is a far cry from enshrining the decision as *binding* precedent.  The Circuit's passing statement in Khaksari v. Chairman, Broadcasting Board Of Governors, 451 F. App'x 1, 4 (D.C. Cir. 2011), see Reply at

5

4, that unpublished panel decisions have "the force of precedent" is not to the contrary. Precedent can have force (a lot or a little) without being binding. Indeed, the D.C. Circuit has elaborated since passing Rule 32.1 that while unpublished panel decisions are precedential, they are not binding on future Circuit panels. In re Grant, 635 F.3d 1227, 1232 (D.C. Cir. 2011); Davis v. U.S. Sentencing Comm'n, 716 F.3d 660, 666 n.2 (D.C. Cir. 2013).

The government acknowledges that unpublished dispositions cannot bind future Circuit panels, but it says that rule does not extend to the District Court. Reply at 4. That is so, the government posits, because the D.C. Circuit "has not held that the District Court may disregard [unpublished] Circuit precedent". Id. True, the Circuit appears not to have had occasion to confirm that unpublished dispositions do not bind the District Court as well. But that silence does not make them binding. The question, moreover, is not whether individual district courts may "disregard" unpublished decisions. If they are cited as permitted under the rules, then we are obligated to consider and give them whatever precedential value we see fit to extend. The issue, rather, is whether unpublished dispositions are binding. The government offers no affirmative support for that contention.

Absent direct support, the government resorts to general principles of vertical stare decisis establishing that "inferior courts must follow the rulings of superior ones." Reply at 5 (first citing Payne v. Taslimi, 998 F. 3d 648, 655 (4th Cir. 2021); then citing United States v. Moore-Bush, 963 F. 3d 29, 37 (1st Cir. 2020); and then citing Ramos v. Louisiana, 590 U.S. 83, 124 (2020)). None of the cases cited by the government deal with unpublished higher-court rulings, however. So the truism for which the government's cases stand is not germane to the central question here. Accordingly, this Court is not bound to follow Karimova. See Hajizadeh

6

v. Blinken, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (finding Karimova nonbinding under D.C. Circuit Rule 36(e)(2)).[2]

The question thus becomes whether the Court *should* apply Karimova. The Court thinks yes. Published or not, the opinion represents the considered and unanimous judgment of a D.C. Circuit panel. And as the panel explained, the relevant State Department regulations can be parsed to say that a consular officer's "refusal" of a visa following an interview concludes the review process even if the visa is placed into administrative processing. Karimova, 2024 WL 3517852, at *4. The Court reaches this conclusion notwithstanding the disconnect between the Circuit's logical interpretation of the regulations and how the visa-review process actually plays out in the real world. In practice, applicants whose visas are placed in administrative processing are informed that their cases remain pending due to the need for further review or outstanding documents, and that the agency will continue to process the applications once any requested documentation has been received. As Judge Jackson aptly observed, "[t]he agency's use of words like 'pending,' 'continue,' and 'processing' would only make sense if consideration had *not* concluded, and that is why this Court and others in this district have found that a [consular] letter saying that a case is pending administrative processing is not a final decision." Ibrahim v. Spera, 2024 WL 4103702, at *3 n.2 (D.D.C. Sept. 6, 2024) (citations omitted); see also, e.g., Giliana v. Blinken, 596 F. Supp. 3d 13, at 18 (D.D.C. 2022) (reaching same conclusion prior to Karimova) (Cooper, J.).

---

[2] As the government points out, Reply at 3, Judge Amy Berman Jackson noted in Ibrahim v. Spera, No. 23-cv-2085, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024), that she was "bound to follow" Karimova. But Ibrahim does not mention, let alone discuss, the Karimova decision's unpublished status. That could be so because the decision was brought to the court's attention through a notice of supplemental authority and its unpublished status was brushed over in the subsequent briefing. In any case, if Judge Jackson focused on the issue and adopted the government's position here, then this Court respectfully disagrees that Karimova is binding.

Given this tension, the Court has avoided applying Karimova in prior visa-delays. See, e.g., Azeez v. Murphy, No. 23-cv-1947 (CRC), 2024 WL 3924565, *3 (D.D.C. Aug. 23, 2024). It was able to do so in those cases because (1) the plaintiffs, as here, asserted non-discretionary duties arising from statutes or regulations apart from § 555(b) of the APA (which was the only alleged source of the duty addressed in Karimova) and (2) the complaints were subject to dismissal on the ground that plaintiffs had not alleged sufficient facts to support a finding of undue delay under the factors set forth in Telecommunications Research & Action Center ("TRAC") v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). Perhaps to force the Court's hand, the government has chosen not to brief the TRAC factors here. So the Court has directly applied Karimova for the first time in this case.

The Court now turns to whether the consular officials involved in this case have a non-discretionary duty to promptly act on Doroodchi's application that is imposed by some other statute or regulation besides § 555(b) of the APA. Plaintiffs here locate such a duty in three places: 8 U.S.C. § 1202(d),[3] 22 C.F.R. §§ 41.106 and 41.121, and 8 U.S.C. § 1571. But none of these statutes or regulations establish a non-discretionary duty that can serve as the basis for Plaintiffs' claim. Consider first § 1202(d), which provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." Compl. ¶ 63. Plaintiffs argue that "Congress's use of the word 'shall' imposes a non-ministerial duty on consular officers" to adjudicate visas within a reasonable time frame. Id. ¶ 64. Not so.

To begin, the Court considers instructive other cases from this district that have interpreted analogous language in § 1202(b), § 1202(d)'s counterpart for immigrant visas. These

---

[3] Plaintiffs alternately cite to §§ 1202(b) and (d). Section 1202(d) is the relevant statute, as it applies to nonimmigrant visas.

cases have found that § 1202(b) is meant to illustrate "*who* reviews visa applications rather than whether all such applications must be reviewed[.]" Zarei v. Blinken, No. 21-cv-2102 (CJN), 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021).  In other words, the statute is intended merely to "cabin[] the State Department's discretion as to who may review and adjudicate immigrant visa applications" but does not "mandate that all applications actually be adjudicated." Babamuradova v. Blinken, 633 F. Supp. 3d 1, 15 (D.D.C. 2022) (citation modified).  Section 1202(d) likewise does not create a duty to further adjudicate a visa placed into administrative processing.

Even if the Court were to find that the statute mandates adjudication, the visa application has already been adjudicated under the logic of Karimova.  There, the Circuit found that, even if the plaintiff was correct that APA § 555(b) created a duty to adjudicate her application, it "*at most* could have entitled [the plaintiff] to the official refusal decision [under 221(g)] she already received[;]" it did not "dictate how the agency can handle her rejected paperwork after a decision has been made."  Karimova, 2024 WL 3517852, at *4.

Plaintiffs here similarly contend that § 1202(d) requires consular officers to adjudicate the visa within a reasonable time period.  However, Doroodchi has already been issued a refusal under INA § 221(g), which is a valid ground for refusing a visa.  22 C.F.R. § 41.121(a).  A broad reading of § 1202(d) to require visa adjudication would *at most* entitle Doroodchi to the § 221(g) refusal she has already been issued.  Consequently, the Court finds that § 1202(d) does not create a discrete duty to further adjudicate Doroodchi's visa application.

Doroodchi also locates non-discretionary duties in 22 C.F.R. § 41.106—which states that "[c]onsular officers must ensure that the Form DS-160 . . . is properly and promptly processed"—and 22 C.F.R. § 41.121—which direct the consular officer to either "issue" or

"refuse" a completed visa application. Opp'n at 12. But these regulations likewise do not impose an additional duty for the consular officer after issuing an INA § 221(g) refusal. Section 41.121 explicitly lists INA § 221(g) as a valid legal ground under which a nonimmigrant visa may be refused. And Section 41.106 states merely that Form DS-160 must be processed "in accordance with applicable regulations and instructions." Under Karimova, the requirement to "'properly and promptly' process visa applications . . . [is] satisfied when Plaintiffs' applications were 'refused.'" See Hemmat v. Blinken, No. 23-cv-2085 (TSC), 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) (citation modified). The regulation does not create an additional post-refusal obligation to process the visa within a certain time frame.

Finally, Doroodchi contends that 8 U.S.C. § 1571 mandates timely adjudication of visa applications. Opp'n at 5; see 8 U.S.C. § 1571 ("It is the sense of Congress that . . . a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition."). Defendants correctly note that 8 U.S.C. § 1571 applied to the Immigration and Naturalization Service, whose functions were turned over to USCIS in 2002. Reply at 12; see 8 U.S.C. §1551 Statutory Note 2. USCIS does not adjudicate visa applications. For certain employment-based visa categories, applicants are required to file a *petition* with USCIS—for example, to establish that the applicant qualifies as a person of extraordinary artistic ability. U.S. Dep't of State, Employment-Based Immigrant Visas, Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/immigrate/employment-based-immigrant-visas.html (last visited June 6, 2025). After USCIS approves the petition, the applicant then submits the visa *application* to the Department of State. Id. Plaintiffs do not claim that USCIS has neglected its duty to process Doroodchi's petition; the petition was, in fact, approved.

Compl. ¶ 16. And 8 U.S.C. § 1571 does not assign any further duties to the consular officer reviewing the visa application.

Plaintiffs' invocation of additional statutes therefore does not differentiate this case from Karimova. As a result, because they have failed to identify a discrete agency action that the government is required to take, they have failed to state a claim upon which relief can be granted. Accordingly, the Court will dismiss Plaintiffs' complaint.

### IV.   Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

                                                                                                    _____
                                                                                                    CHRISTOPHER R. COOPER
                                                                                                    United States District Judge

Date: July 7, 2025